Michael H. Ference, Esq. (MF-7600)
Sameer Rastogi, Esq. (SR-5249)
SICHENZIA ROSS FRIEDMAN FERENCE LLP
1065 Avenue of the Americas, 21st Floor
New York, New York 10018
(212) 930-9700

**05 CV 5691**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ACIES CORPORATION,                          :     Index No.:

        Plaintiff,                        :     COMPLAINT

- against -                                 :

MICHAEL BEYGELMAN,                          :     Jury Trial Demanded

        Defendant.                        :
------------------------------------------------------------x

    Plaintiff Acies Corporation ("Acies" or "Company"), by and through their counsel, Sichenzia Ross Friedman Ference LLP, as and for its Complaint against Defendant Michael Beygelman ("Beygelman"), hereby alleges as follows:

### Parties

1. Plaintiff Acies is a publicly traded company that specializes in payment processing services and online banking services to small, medium and large companies across the country. Acies conducts its business through its wholly owned subsidiary Acies, Inc. Non-party Oleg Firer ("Firer") is the Chief Executive Officer and Director of Acies. Acies principal place of business is 14 Wall Street, Suite 1620, New York, New York 10005.

2. Defendant Michael Beygelman is a natural person who resides at 46 Cambridge Drive, Merrimack, New Hampshire 03054. Mr. Beygelman was formerly the Chairman of the Board of Directors of Acies and conducted business in New York.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1332(a)(2), based on the diversity of citizenship of the parties: Plaintiff is a citizen of New York and Defendant, a citizen of New Hampshire, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b)(3), because a substantial part of the events giving rise to the claim occurred in this district, thus allowing this Court to exercise personal jurisdiction over the Defendant in this district.

## As and For a Cause of Action
(Common Law Fraud and Fraud in the Inducement)

5. In or about February 2004, Mr. Firer was introduced to Mr. Beygelman regarding a company that Defendant Beygelman had founded called CellularJuice. Specifically, Defendant Beygelman sought out Mr. Firer to review a business plan for CellularJuice.

6. At the time of his introduction, Defendant Beygelman was, and upon information and belief still is, the Executive Director of the Human Resources Outsourcing Association. ("HROA"). HROA is a non-profit association dedicated to promoting professionalism in, and best practices of, the Human Resource Outsourcing industry ("HRO"). The HROA member community consists of a broad coalition of decision makers and HRO professionals; forward-looking organizations and individuals that act as a catalyst to originate many of the HRO industry's most important and visionary concepts and best practices.

7. Defendant Beygelman advised Mr. Firer that he was a well-respected member of the investment community. Specifically, Defendant Beygelman advised that he has been involved in an officer or director role with public and private companies for many years. Most recently, he was a Founder, Chairman and Chief Executive Officer of a company called

iamindependant, inc. In addition, Beygelman was the Chief Operating Officer of a company called Careerbay.com, which was eventually sold to Monster.com. Based upon his credentials, Defendant Beygelman advised Mr. Firer that he could provide significant value to the Company.

8.     During their discussions, Defendant Beygelman advised Mr. Firer that he could assist Acies obtain funding and help develop their business. Specifically, Defendant advised Mr. Firer that he had contacts with several funding sources, was well respected in the financial community, and had been instrumental in assisting other businesses similar to Acies in raising capital as well as generating revenues. Defendant Beygelman further advised that he could assist Acies assemble an independent board of directors. These representations were false and misleading when made.

9.     As a small-cap publicly traded company, Acies was always in need of additional financing. Moreover, as a general rule, having an independent board of directors helps attract additional funding sources.

10.    Prior to reviewing Levy and Rudder Capital's work product and based upon his seeming wealth of contacts and business acumen, Acies appointed Defendant Beygelman its Chairman of the Board of Directors. In that regard, Defendant was to be paid $5,000 per month, a one-time issuance of 951,456 restricted shares of Acies' common stock (the "Restricted Shares"), and 90,000 shares of Acies' common stock that would be registered pursuant to a Form S-8 (the "Free-Trading Shares").

11.    Thereafter, in New York, Defendant Beygelman introduced Acies to an individual named Jean-Marc Levy ("Levy") of Rudder Capital. Defendant Beygelman advised Mr. Firer that Levy could prepare financial projections and review the Company's business model.

Essentially, Levy and Rudder Capital would act as management consultants on behalf of Acies, and in connection with such services, required a retainer payment of $25,000.

12.     While in New York, Defendant Beygelman advised Acies and its Board of Directors that the Company should make the investment because both Levy and Rudder Capital would perform valuable services, services that would assist Defendant Beygelman raise money for Acies. Defendant's statements were false and misleading when made.

13.     Based upon Defendant Beygelman's representations, Acies agreed to retain Levy and Rudder Capital and pay their fee of $25,000. After they received payment, Levy and Rudder Capital allegedly performed a financial analysis, which contained numerous mistakes, failed to properly account for the business' revenues and expenses, and as a result, was not useful for the Company's business.

14.     Defendant Beygelman also promoted to Acies to appoint Levy and his partner Gail Lieberman to the Company's board. However, Levy made demands, which were highly promoted by Beygelman, that Acies obtain Directors and Officers insurance with coverage limits that were not affordable to Acies at that time. Therefore based upon his incorrect analysis and unrealistic demands, the Company rejected both Levy's and Lieberman's appointments. Thereafter, Beygelman continued to tout other individuals who he had relationships with for nomination to Acies' board of directors. However, such nominations contradicted Beygelman's original mission statement that he would assist the Company assemble an independent board of directors.

15.     On or about September 13, 2004 Acies issued the Restricted Shares to Defendant Beygelman, and thereafter, on or about September 23, 2004, issued the Free-trading Shares.

16. By the end of September 2004, Defendant Beygelman still had not made any introductions to potential investors into the Company. However, and as Defendant Beygelman knew, Acies was in desperate need of financing to continue operations. As a result, Mr. Firer contacted his friends and family to obtain additional financing to assist the Company.

17. At no point did Defendant Beygelman introduce his so-called "contacts" to Acies nor did he introduce Acies to any new investors or sources of investment funds. Instead, Beygelman nominated friends and associates to the Acies board of directors and improperly obtained compensation of cash and stock from the Company for his deceptive efforts.

18. Rather than wait for Defendant to introduce Acies to his "contacts," Mr. Firer presented Defendant Beygelman with a list of over 100 potential institutional and high net worth investors to solicit for possible investment into the Company. Defendant Beygelman flatly refused to contact these investors and advised Firer that he should not get involved in capital raising endeavors because it was Beygelman's specialty.

19. Thereafter, another two (2) weeks had passed and Beygelman had still failed to obtain any investors on behalf of Acies. With the Company again beginning to experience cash flow pains, Mr. Firer arranged a meeting in New York with an investment banker to discuss a possible investment into the Company. However, at the meeting, Defendant Beygelman failed to promote the Company; instead, he focused upon his own business agenda. Even more troubling, Defendant's conduct undermined the Company's ability to obtain financing to the point that the investment banker advised Mr. Firer that he did not want Defendant Beygelman to be present at any future meetings.

20. In another meeting with potential investors in New York and in contradiction with his expressed mission for the Company, Defendant Beygelman disparaged Acies' financial outlook and its management.

21. In or about November 2004, Acies made the decision to remove Defendant Beygelman from the Board of Directors due to his questionable loyalty to the Company, inability to raise capital for the Company, and failure to promote the Company's business.

22. As a result, on or about November 16, 2004, the majority of the Company's shareholders voted to remove Defendant Beygelman from Acies' board.

23. As of November 30, 2004, the Company had made cash payments of $25,000 and share issuances valued at approximately $177,000.

24. Each of the aforementioned material representations and statements made by Defendant Beygelman was untrue, deceitful, false and fraudulent, and was known by Defendant to be untrue at the time they were made, and/or omitted to state material facts necessary in order to make the statements and representations made, in the light of the circumstances under which they were made, not misleading.

25. Each of the aforementioned untrue, false and fraudulent statements, representations, and omissions of materials facts made by Defendant with the intent to deceive and mislead Plaintiff in order to induce Plaintiff to appoint Defendant Chairman of the Board and pay him several hundreds of thousands of dollars, or were made with such a reckless or deliberate disregard of the applicable facts and circumstances such that it is reasonable to infer that the same were made by Defendant knowingly and with the intent to deceive and defraud Plaintiff.

26.  In reasonable reliance upon the aforementioned representations and statements, Plaintiff paid Defendant in excess of $200,000 in cash and stock and appointed him Chairman of the Board of Acies.

27.  As a proximate result of the aforementioned facts, circumstances and each Defendant's fraudulent misrepresentations and omissions of material fact, Plaintiff has sustained losses and damages

28.  As a result of the foregoing, Defendant has damaged Plaintiff in an amount to be determined at trial, but in any event not less than $200,000 in the aggregate, together with interest as provided by law, reasonable attorneys' fees, and costs of this action.

### As And For A Second Cause Of Action
(Common Law Negligent Misrepresentation)

29.  Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

30.  As stated herein, Defendant had a duty to give correct information to Plaintiff regarding his ability to obtain financing as well as assist in Acies's business plans, operations, finances and assets.

31.  Defendant was aware that his representations to the Company were being supplied to and relied upon by Plaintiff in connection with Plaintiff's decision to appoint Defendant its Chairman as well as provide him with compensation relating to same.

32.  In imparting the representations, Defendant acted carelessly in providing factually incorrect statements and representations, or acted carelessly in omitting to state material facts necessary in order to make the statements and representations made, in the light of the circumstances under which they were made, not misleading.

33. Defendant knew, should have known, or reasonably expected that his representations would be relied upon by Plaintiff, who, in fact, did justifiably relied upon the statements and representations to its detriment.

34. As a proximate result of the aforementioned facts, circumstances and each Defendant's fraudulent misrepresentations and omissions of material fact, Plaintiff has sustained losses and damages

35. As a result of the foregoing, Defendant has damaged Plaintiff in an amount to be determined at trial, but in any event not less than $200,000 in the aggregate, together with interest as provided by law, reasonable attorneys' fees, and costs of this action.

### As and For a Third Cause Of Action
(Unjust Enrichment)

36. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

37. Plaintiff agreed to appoint Defendant Beygelman and pay him certain compensation in cash and stock based upon Defendant Beygelman's representations of his ability to locate and obtain investors into the Company.

38. Defendant's failure to locate and obtain investors into the Company wrongfully allowed him to take advantage of Plaintiff without the agreed upon consideration.

39. Receiving Plaintiff's payment without performing any services for the Company has unjustly enriched Defendant.

40. As a result of the foregoing, Defendant has damaged Plaintiff in an amount to be determined at trial, but in any event not less than $200,000 in the aggregate, together with interest as provided by law, reasonable attorneys' fees, and costs of this action.

### As and For a Fourth Cause of Action
### (Breach of Fiduciary Duty)

41. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the above paragraphs as if fully set forth herein.

42. When Plaintiff Acies employed Defendant Beygelman, particularly as the Chairman of the Board of Directors, he owed Plaintiff fiduciary duties of loyalty and fair dealing.

43. Defendant had fiduciary duties not to disparage the Company, its financial prospects, and management or use the confidential and proprietary information acquired during his employment in a manner contrary to Acies' interests.

44. As a result of Defendant's actions, he breached his fiduciary duties owing to Acies.

45. As a result of the foregoing, Defendant has damaged Plaintiff in an amount to be determined at trial, but in any event not less than $200,000 in the aggregate, together with interest as provided by law, reasonable attorneys' fees, and costs of this action.

### Jury Demand

Plaintiff demands a trial by jury on all issues.

### Prayer For Relief

**WHEREFORE**, Acies respectfully requests that the Court render a Judgment in its favor and against Defendant Beygelman as follows:

a. On all Causes of Action, compensatory damages in any amount to be determined at trial, but in any event not less than $200,000.00, plus interest accrued thereon;

b. All costs, including reasonable attorney's fees, in initiating this action; and

c.  Such other and further relief as the Court deems just and equitable.

Dated: New York, New York
June 1, 2005

Respectfully submitted,

SICHENZIA ROSS FRIEDMAN FERENCE LLP

By: _____
Michael H. Ference, Esq. (MF-7600)
Sameer Rastogi, Esq. (SR-5249)
1065 Avenue of the Americas, 21st Floor
New York, New York 10018
(212) 930-9700

Attorneys for Plaintiff Acies Corporation